IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| REGENCY PLASTICS - EL PASO, INC. and REGENCY PLASTICS - UBLY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL PRODUCTS, LTD., <br><br> Defendants. | § § § § § § § § § § § § EP-09-CV-292-KC |

## ORDER

On this day the Court considered Defendant National Products, Ltd., ("National Products") Motion to Dismiss under Rule 12(b) for Lack of Personal Jurisdiction (the "Motion"). For the reasons set forth herein, the Motion (Doc. No. 8) is **DENIED**.

**I. BACKGROUND**

    **A.**     **Statement of Facts**

Plaintiff Regency Plastics-El Paso, Inc. is a Texas corporation with its principal place of business in Texas. Compl. ¶ 1 (Doc. No. 2). Plaintiff Regency Plastics-Ubly, Inc. is a Michigan corporation with its principal place of business in Michigan. *Id.* ¶ 2. Collectively both Plaintiffs are hereinafter referred to as "Regency Plastics." Defendant National Products, Ltd., ("National Products") is a Hong Kong limited partnership with its principal place of business in Hong Kong. *Id.* ¶ 3; Def.'s Mem. P. & A. ¶ 1 (Doc. No. 7).

In 2006, Regency Plastics and National Products entered into an agreement

1

("Agreement") whereby Regency Plastics would produce plastic parts (the "Parts") for National Products. Compl. ¶ 6. The events giving rise to Regency Plastics' claims began in Michigan where the Regency Plastics representatives of Michigan negotiated with representatives of National Products along with corporate representatives of a third party, Little Lykes, Inc., a manufacturer of children's ride-on toys. Def.'s Mem. P. & A. ¶ 2.

After entering into the Agreement, National Products issued purchase orders to Regency Plastics for the Parts. Compl. ¶ 13. Even after the initial Agreement, negotiations for the production and manufacturing of the plastic parts continued, whereby both parties actively arranged to have production moved to El Paso. Pl.'s Resp. ¶¶ 4-20 (Doc. No. 12). Throughout those negotiations, Regency Plastics produced and delivered to National Products the ordered Parts. Compl. ¶ 14. The Parts were received and accepted by National Products. *Id*. ¶ 15. The Agreement was allegedly breached by National Products when they refused to pay Regency Plastics for the shipped Parts which they received and accepted. *Id*. ¶ 16.

Regency Plastics seek the recovery of $73,755.53 presently due and outstanding in connection with the sale of the Parts to National Products, as provided by the Agreement. *Id*. ¶ 23. Regency Plastics also contend that they are entitled to recover from National Products approximately $115,000 related to the anticipated liquidation of certain equipment and raw material ("Production Assets") that were purchased in anticipation of a certain level of sales to National Products. *Id*. ¶ 26. Regency Plastics contend that they can also recover reasonable and necessary attorney's fees. *Id*. ¶ 29. The fees incurred as of the initial filing of suit exceed $3,750. Reply ¶ 31 (Doc. No. 16). Moreover, they contend that the reasonable and necessary attorney's fees presently exceed $15,000.00 and the reasonable and necessary attorney's fees to

2

be reasonably expected to be incurred by Regency Plastics exceed $25,000. *Id.* Thus, they have satisfied the $75,000 amount in controversy threshold for diversity jurisdiction. *Id.* ¶ 31.

## B. Procedural Posture

On August 11, 1009, Regency Plastics filed a Complaint against National Products seeking judgment against National Products for $73,755.53, the sum that National Products allegedly owes Regency Plastics for the Parts; $115,000, the amount National Products owes Regency Plastics in connection with Production Assets; its attorney's fees; its court costs; any legally applicable pre-judgment and/or post-judgment interest; and any other relief to which it may be justly entitled. Compl. ¶ 29.

On November 12, 2009, National Products presented a Motion to Dismiss Under Rule 12(b) for Lack of Jurisdiction alleging that (1) they are not subject to the personal jurisdiction of this court; and that (2) the amount in controversy is less than the sum or value required for diversity jurisdiction as specified by 28 U.S.C. § 1332. *See generally*, Def.'s Mot. to Dismiss (Doc. No. 8). Subsequently, Regency Plastics submitted a Response to the Motion to Dismiss (Doc. No. 12) to which National Products filed a Reply (Doc. No. 16).

## II. DISCUSSION

### A. Standard

#### 1. Personal jurisdiction

When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir. 1985). In the context of a motion to dismiss based upon pleadings and affidavits, the plaintiff may satisfy this burden by

making a *prima facie* showing of the facts on which jurisdiction is predicated. *Wilson v. Belin,* 20 F.3d 644, 648 (5th Cir. 1994). Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists. *Thompson v. Chrysler Motor Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

A federal district court may exercise jurisdiction over a non-resident defendant if "(1) the forum state's long arm statute confers personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). The Texas long arm statute allows for the exercise of personal jurisdiction over a non-resident to the fullest extent of the United States Constitution. *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (2000)). Thus, for a federal court in Texas to properly exercise personal jurisdiction, the plaintiff must show that the defendant has sufficient contacts with the state, and that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Id.* (citing *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and *ASARCO, Inc. v. Glenara, Ltd.*, 912 F.2d 784 (5th Cir. 1990)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985).

Personal jurisdiction over a nonresident of the forum state can be either "general" or "specific." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984). If the nonresident defendant's contacts with the forum state are "substantial" or "continuous and systematic," the defendant is subject to "general jurisdiction" in the forum state even if the cause

4

of action is unrelated to the defendant's activities in the state. *Id*. at 416. Where the defendant's activities within the forum are not so pervasive as to subject it to general jurisdiction, the defendant may still be subject to specific jurisdiction depending upon the nature and quality of the contacts in relation to the cause of action. *See Nuovo Pignone. SpA v. Storman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002). The Fifth Circuit applies a three-part test to determine whether a court may exercise specific jurisdiction: (1) the nonresident defendant must do some act or consummate some transaction within the forum or perform some act by which the defendant purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Id.*

### 2. Subject matter jurisdiction

A district court has diversity jurisdiction over any civil action where all the parties are citizens of different states, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). The party seeking to invoke the federal court's diversity jurisdiction bears the burden of proving diversity of citizenship and the amount in controversy. *Id*. In determining whether the requisite jurisdictional amount is present, the Court applies the "legal certainty" test which was set forth in *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938).

When the jurisdictional amount is challenged, the party invoking the jurisdiction of the federal court has the burden of proving that it is met. *Red Cab*, 303 U.S. at 289. If it is legally certain from the face of the pleadings that the plaintiff cannot recover the jurisdictional amount, then the court shall dismiss the suit for lack of jurisdiction. *Id*. at 289. Accordingly, an amount

in controversy equal exactly to $75,000 or less does not meet the jurisdictional requirement. *See Stonewall Ins. Co. v. Lopez*, 544 F.2d 198, 199 (5th Cir. 1976) (stating in dicta that a federal court lacks jurisdiction under § 1332 when the amount in controversy exactly equals the jurisdictional amount).

### B. Personal Jurisdiction Over National Products

#### 1. Minimum contacts and purposeful availment

National Products argues that this Court does not have personal jurisdiction over it because sufficient minimum contacts do not exist between National Products and the State of Texas to satisfy the minium contacts requirements for either general or specific jurisdiction. Def.'s Mot. to Dismiss ¶ 15 (Doc. No. 8). National Products explains that it has done nothing to purposefully avail itself of the Texas forum. *Id*. ¶ 13. Specifically, National Products notes that it does not have offices, distributors, employees, real property or telephone listings in Texas. *Id*. It does not have and is not required to have a registered agent in Texas. *Id*. It does not make unsolicited or any mailings to Texas customers or even sell direct to anyone located in Texas. *Id*. It does not recruit employees in Texas and does not advertise in Texas. *Id*. Therefore, National Products argues that for such reasons this court should dismiss the case for lack of jurisdiction. *Id*.

While factors such as the lack of physical presence or physical contact with a state asserting jurisdiction are important, such factors are not dispositive. *El Paso Healthcare System, Ltd. v. Molina Healthcare of New Mexico, Inc*., No. 3:09-CV-54-KC, 2009 WL 1743221, at *5 (W. D. Tex. May 01, 2009). As the Supreme Court said in *Burger King*:

"Although territorial presence frequently will enhance a potential defendant's

> affirmation with a State and reinforce the reasonably foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a state in which business is conducted. So long as a commercial actor's efforts are 'purposefully directed' towards residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."

*Burger King*, 471 U.S. at 476 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774-75 (1984); *Clader v. Jones*, 465 U.S. 783, 778-90 (1984); *McGee v. International Life Ins.*, 355 U.S. 220, 222-23 (1957)).

Regency Plastics argue that the nature of the parties' contacts -- telephone conversations, mailing of payments, and e-mails -- are contacts that create personal jurisdiction. Pl.'s Reply ¶ 5-20. The Supreme Court has expressly stated that electronic and telephonic communications may indeed be the basis for personal jurisdiction if they are "purposefully directed towards residents of another State." *Burger King*, 471 U.S. at 476 (citations and quotation marks omitted). Accordingly, the Fifth Circuit has found personal jurisdiction when parties engaged in as little as one telephone conversation and the subject of the conversation was directed at the forum state. *See, e.g., D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 547 (5th Cir. 1985) (holding that factual allegations in complaint involving telephone conversations were sufficient to demonstrate that a corporation had sufficient contacts with the state of Texas to establish jurisdiction); *Brown v. Flowers Ind., Inc.*, 688 F.2d 328, 330 (5th Cir. 1982) (noting that the claim of jurisdiction was predicated on a single telephone call).

Regency Plastics contend that National Products made it clear that it was largely because Regency Plastics had an El Paso facility that National Products was considering it for production of the Parts. Pl.'s Resp. Ex. 2 ¶ 5 ("Aff. of David Kuntzman") (Doc. No. 12). The Supreme Court has held that foreseeability is a factor in determining minimum contacts when a party can

7

"reasonably anticipate" being haled into a foreign court. *Burger King*, 471 U.S. at 474 (citing *World-wide Volkswagen*, 444 U.S. at 297). A party can "reasonably anticipate" being haled into a forum state's court when it has "purposefully availed" itself of the laws of the forum state and the privilege of doing business there. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

National Products has clearly availed itself of the privileges and protections of doing business in Texas. National Products insisted that production occur in Texas. Pl.'s Resp. Ex. 1 ¶ 7 ("Aff. of Cliff Braun") (Doc. No. 12). National Products issued purchase orders to Texas. Pl.'s Resp. ¶ 11; Aff. of Cliff Braun ¶ 17. The manufacturing occurred in Texas, as well as delivery and transfer of title. Pl.'s Resp. ¶ 12; Aff. of David Kuntzman ¶¶ 6-7. National Products communicated with Regency Plastics in Texas. *Id*. ¶¶ 6-10. National Products visited Texas in connection with productions of the Parts. *Id*. ¶ 18. National Products' continuing contacts with Regency Plastics in Texas are therefore "far from 'random,' 'fortuitous,' 'attenuated,' or 'unilateral.'" *See Burger King*, 471 U.S. at 475 (quoting *Keeton*, 465 U.S. at 774; *World-Wide Volkswagen Corp.*, 44 U.S. at 299; *Helicopteros Nacionales de Colombia*, S.A., 466 U.S. at 417). Rather, these contacts form an ongoing business relationship from which National Products "purposefully derives benefit." *See Id.* at 473 (quoting *Kulko v. California Superior Court*, 436 U.S. 84, 96 (1978). These interactions further create "continuing obligations" between National Products and Regency Plastics, such that a "substantial connection" exists between National Products and the forum state. *See Burger King*, 471 U.S. at 476 (citing *Travelers Health Assn. v. Virginia, 339 U.S. 643*, 648 (1950)).

Finally, given National Products's purposeful availment of Regency Plastics's business in Texas by insisting that production be moved to El Paso, it would clearly be "unfair to allow

[National Products] to escape having to account [in Texas] for consequences that arise proximately from such activities[.]" *See Id.* at 474 ([T]he Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed."). Therefore, National Products interactions with Regency Plastics established the minimum contacts necessary for personal jurisdiction.

### 2. Fair play and substantial justice

Having found that minimum contacts necessary for personal jurisdiction, the Court must next look at "whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Id.* at 476 (citing *Int'l Shoe Co.*, 326 U.S. at 320). In answering this question, a court may look to (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the share interest of the several states in furthering fundamental social policies. *Id*. at 477 (quoting *World-Wide Volkswagen*, 444 U.S. at 292); *see also Stuart*, 772 F.2d at 1192 (summarizing the *Burger King* factors as the "interest of the state in providing a forum for the suit, the relative conveniences and inconveniences of the parties, and the basic equities"). Where a defendant has purposefully availed itself of a forum state's jurisdiction, that defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

National Products has made a minimal attempt to present "a compelling case" that jurisdiction would be unreasonable in Texas. National Products mainly contends that they are not subject to the personal jurisdiction of this Court based on lack of contacts with Texas. Def's

9

Mot. to Dismiss ¶ 2. Talion Ho Wai Chuen, Finance Manager of National Products, declared in a single paragraph that "[National Products] would be greatly burdened by having to defend these allegations far from the area where they are actually located." Decl. of Wai Chuen ¶ 11 (Doc. No. 9).

Cases where personal jurisdiction offends traditional notions of fair play and substantial justice "are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994) (*citing Burger King*, 471 U.S. at 477). In this case, requiring National Products to litigate in El Paso, when it has conducted its business in El Paso, does not offend traditional notions of fair play and substantial justice. National Products reached out to Texas, specifically the El Paso area, for its own commercial reasons. Decl. of Wai Chuen ¶ 5. Accordingly, the court has jurisdiction over National Products.

### C. Amount in Controversy

In the Motion, National Products argues that the damages that Regency Plastics have pleaded are insufficient to invoke diversity jurisdiction of this court pursuant to 28 U.S.C. § 1332. Def"s Mot. to Dismiss ¶ 16. To have diversity jurisdiction, the amount in controversy must exceed the jurisdictional minimum amount of $75,000. *Grant v. Chevron Phillips Chemical Co.*, 309 F.3d 864, 869 (5th. Cir. 2002). Regency Plastics are seeking to add both consequential damages and their attorney's fees to the $73,755.53 presently due and outstanding in connection with the sale of the Parts to National Products, in order to meet the jurisdictional amount in controversy. Compl. ¶ 29; Pl.'s Resp. ¶ 31.

Attorneys' fees are included in the jurisdictional amount if the applicable state law permits recovery of the fees in the particular suit. *See Mo. State Life Ins. v. Jones*, 290 U.S. 199, 202 (1933); *H&D Tire and Automotive-Hardware, Inc. v. Pitney Bowes* Inc., 227 F.3d 326, 330 (5th Cir. 2000); *Foret v. S. Farm Bureau Life Ins. Co.*, 918 F.2d 534, 537 (5th Cir. 1990). Under Texas law, a prevailing party is entitled to recover its attorneys' fees in a breach of contract action. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (Vernon 2008). The Fifth Circuit has interpreted this statute as mandatory "as long as there is proof of reasonable fees . . . . and the plaintiff has been awarded damages." *Mathis v. Exxon Corp.*, 302 F.3d 448, 462 (5th Cir. 2002) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (Vernon 2002)); *accord Coffel v. Stryker Corp.*, 284 F.3d 625, 640 (5th Cir. 2002) (holding for a Texas state-law claim heard in federal district court, that "[t]he award of reasonable attorneys' fees is mandatory under § 38.001 if the plaintiff prevails in his or her breach of contract claim and recovers damages").

In the instant case, Regency Plastics is seeking attorneys' fees and has submitted evidence that would permit this Court to allow attorneys' fees to be included in the calculation of the amount in controversy in this breach of contract action. *See* Pl's Resp. Ex. 6 ¶ 5 ("Aff. of Michael Stell") (Doc. No. 12). Regency Plastics contend that the reasonable and necessary attorneys' fees incurred by them as of the initial filing of suit exceed $3,750. Aff. of Michael Stell ¶ 5. Further, Regency Plastics explains that the total amount of attorneys' fees accrued to date exceeds $15,000. *Id.* Because the reasonable and necessary attorneys' fees may be added to the $73,755.53 allegedly due and outstanding in connection with the sale of the Parts to National Products for the purposes of determining the amount in controversy, the $75,000 amount in controversy threshold for diversity jurisdiction is satisfied. Moreover, the Court need not address

11

the $115,000 related to consequential damages because the jurisdictional threshold has been met by adding attorneys' fees.

## III. CONCLUSION

For the reasons set forth above, National Products's Motion to Dismiss under Rule 12(b) for Lack of Personal Jurisdiction (Doc. No. 8) is **DENIED**.

**SO ORDERED**.

**SIGNED** on this 3rd day of March 2010.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE